IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM F. DOYLE )
*an adult individual*, )
          **Plaintiff,** )
) 2:11-cv-401
          v )
THE WESTERN PENNSYLVANIA )
TEAMSTERS AND EMPLOYERS PENSION )
FUND, )
          **Defendant.** )

## MEMORANDUM OPINION AND ORDER OF COURT

Presently pending before the Court is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 17) filed by the Western Pennsylvania Teamsters and Employers Pension Fund (the "Fund"), with brief in support. Plaintiff William Doyle filed a brief in opposition to the motion and the Fund filed a reply brief. The parties have also fully developed their respective positions regarding the Concise Statement of Material Facts ("CSMF") and each party has submitted documents and affidavits. The motion is ripe for disposition.

Factual and Procedural Background

Doyle was employed throughout his career as a truck driver. He was a member of the Teamsters Union and participated in the pension plan administered by the Fund. On May 19, 2003 Doyle retired and became eligible to receive a monthly retirement benefit of $3,500.00. Pursuant to the terms of the Pension Plan, in the event that Doyle engaged in "Suspendible Employment," his pension benefit would be deducted for that month.

On September 25, 2000, the Fund sent a Notice to all participants concerning changes to the "suspension of benefits" provisions (the "Notice"). As relevant to this case, the Notice

1

defined "Suspendible Employment" as "employment of 50 or more **hours of service** in a calendar month." (Emphasis added). The Notice did not purport to be authoritative, but rather, stated: "This Notice is only a summary of the Amendment to Section 4.6." The Notice also provided a mechanism for employees to submit "a written request for a determination of whether specific contemplated employment will cause the suspension of your benefit payments."[1]

The Plan § 4.6(c)(2) defined "Suspendible Employment" as "employment for fifty (50) or more **Hours of Service** during a calendar month as defined in 29 C.F.R. §§ 2530-200b-2(a)(1) or (2)." (Emphasis added). Section 4.6(c)(7) of the Plan then imposed an "hours paid" test:

> For the purposes of determining the number of a Participant's hours of Suspendible Employment, each hour of Suspendible Employment for which the Participant is **paid**, or entitled to payment, for the performance of duties for an employer, and each hour of Suspendible Employment for which the Participant is **paid**, or entitled to payment, directly or indirectly, by an employer other than for the performance of duties, shall be taken into account.

(Emphasis added); *Accord* 29 C.F.R. §§ 2530-200b-2 ("hour of service" defined as "each hour for which an employee is **paid**").

After his retirement, Doyle became employed part-time as a truck driver by Del Monte Foods, and its successor, Bay Valley Foods (collectively "Bay Valley"). On days he worked, Doyle was guaranteed to be paid for eight (8) hours, regardless of the number of hours he actually worked. Doyle submitted a Daily Truck Report to Bay Valley which reflected the assignments he completed on a particular day. Bay Valley did not require Doyle to record his actual time and, apparently, no records were maintained by Bay Valley which showed the actual hours worked by truck drivers. Indeed, Doyle maintains that Bay Valley's records were notoriously inaccurate, such that drivers would be underpaid in some pay periods and then overpaid in a subsequent period to "catch up."

---

[1] There is no indication that Doyle made such a request.

Doyle contends that, in an effort to avoid engaging in Suspendible Employment, he contemporaneously maintained monthly calendars to record the number of hours for which he was to be paid in a given month, and that he turned down assignments to avoid going over the 50 hour per month limit. The entries on the calendars submitted by Doyle are not detailed, and primarily consist of the word "called" or the numbers "8", "9", "10", or "12" without any further detail. Allegedly, the numbers refer to hours worked by Doyle at Bay Valley, but that is by no means apparent from the face of the calendars. Moreover, there are no supporting details as to start times, end times, locations or tasks performed.

Doyle stated in a notarized form that he had worked for Bay Valley after his retirement, but had not been employed for 50 or more hours in any month. In 2006, an auditor for the Fund performed a contribution compliance audit on Bay Valley. On February 2, 2007, the Fund notified Doyle that it believed he had engaged in Suspendible Employment during nine months in the period from January 2003 through September 2006 and sought information to resolve the discrepancy. A hearing was conducted on March 7, 2007, which Doyle attended. On March 22, 2007, the Fund provided Doyle with an auditor's report based on the evidence at the hearing, which concluded that Doyle had engaged in Suspendible Employment during eight months and sought his response.[2] None was filed. In April 2007, the trustees of the Fund decided that Doyle was required to repay his pension for eight months, a total of $28,000.00, with interest. In August 2007, Doyle requested a second appeal hearing, which was eventually held in April 2009. Doyle testified, was represented by counsel, and provided (for the first time) the calendars discussed above. Counsel for Doyle provided additional information after the hearing. The trustees of the Fund also considered a notarized statement by Jason Nicholich and Lou Metz, to the effect that Bay Valley's payroll records were inaccurate. The Fund's auditor considered the

---

[2] The Fund agreed with Doyle as to one month.

information and prepared a report dated June 23, 2009, which recommended that Bay Valley's records should be used to determine Doyle's hours. On September 9, 2009, the Fund notified Doyle that it had denied his second appeal and reaffirmed the decision that he had engaged in Suspendible Employment during eight months. This lawsuit was filed on March 28, 2011.

Standard of Review

The first step in deciding the motion for summary judgment is to determine the standard of review which governs the Plan's denial of benefits. "ERISA does not specify the standard of review that a trial court should apply in an action for wrongful denial of benefits." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 160 (3d Cir. 2007) (overruled on other grounds). However, the United States Supreme Court has held that "a denial of benefits challenge under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Metropolitan Life Insurance v. Glenn*, 554 U.S. 105, 111 (2008). When the benefit plan gives the administrator discretion to determine eligibility for benefits, the decision must be reviewed under an "abuse of discretion" or "arbitrary and capricious" standard. *See Firestone Tire & Rubber Co.*, 489 U.S. at 115; *see also Michaels v. Equitable Life Assurance Soc.*, 2009 WL 19344, *4 (3d Cir. Jan. 5., 2009) (non-precedential opinion) (noting that plan which gives administrator discretion is reviewed "under an arbitrary and capricious standard"). Both of these phrases are understood to require a reviewing court to affirm the Administrator unless an underlying interpretation or benefit determination was unreasonable, irrational, or contrary to the language of the plan. *See Michaels*, 2009 WL 19344 at *4 ("To determine if a decision is arbitrary and capricious, this

4

Court must consider whether the administrator had a reasonable basis for its decision.");
*Abnathya v. Hoffman–Laroche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (abrogated on other grounds) (noting that under the arbitrary and capricious standard, which is "essentially the same as an 'abuse of discretion' standard, the court may overturn a decision if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'") Doyle acknowledges that the Fund has discretionary authority to determine eligibility for benefits and that an "arbitrary and capricious" standard of review applies. *See* Plaintiff's Brief at 6 and n.1.

Legal Analysis

Doyle reasons as follows: (1) the definition of Suspendible Employment in the Notice (i.e., more than 50 "hours of service") adopted an "hours worked" test; (2) the "hours worked" test in the Notice supersedes the conflicting "hours paid" test set forth in the actual terms of Plan § 4.6(c)(7); and (3) Doyle's calendars are more persuasive than the Bay Valley payroll records in proving the amount of time he worked. The Court acknowledges that Doyle's efforts to avoid triggering the reduction of his pension were apparently frustrated, and that the problems were caused, at least in part, by the poor record-keeping of Bay Valley. However, the Court is not persuaded by any step of Doyle's legal argument.

The phrase "hours of service" is facially ambiguous and does not clearly establish an "hours worked" test. Indeed, the Plan §§ 4.6(c)(2) and (7) and 29 C.F.R. §§ 2530-200b-2 use the phrase "hours of service" in establishing an "hours paid" test. Doyle's effort to create a conflict between the documents is not persuasive.

Even assuming, arguendo, that the Notice did reflect an "hours worked" test, the Notice could not have overridden the "hours paid" test contained in the actual Plan.[3] The Notice did not purport to be an authoritative pronouncement. To the contrary, the Notice stated, on its face, that it was only a summary of the actual Plan language. Moreover, in *CIGNA Corp. v. Amara,* 131 S.Ct. 1866, 1877-78 (2011), the United States Supreme Court held that summary documents, such as the Notice, provide communication about the plan but do not constitute the terms of the plan and cannot be used to reform a plan, as written. In this case, it is undisputed that the actual Plan establishes an "hours paid" test.

Regardless of the applicable test, the information provided by Doyle does not outweigh the payroll records of Bay Valley. His calendars were not provided until 2009, some two years after his initial hearing and they simply lack sufficient detail. There are no starting/ending times; descriptions of tasks performed; or even any explicit references to work. Doyle has not provided any evidence to show that he was not actually paid the amounts reflected in the Bay Valley records. Given the deferential standard of review, there is no basis to overturn the decision of the Fund to use the actual payroll records from the employer, notwithstanding their flaws.

Finally, Doyle contends that he did not receive a full and fair review process. Primarily, Doyle contends that he was not given an opportunity to respond to the analyses prepared by the auditor after the two hearings. The auditor's March 2007 analysis was based on information presented by Doyle at that hearing and was given to Doyle several weeks later. The Fund provided multiple opportunities over the next two years for Doyle to respond to the analysis and to demonstrate that he had not engaged in Suspendible Employment. Eventually, a second hearing was conducted in April 2009 at which Doyle introduced his calendars. Doyle's attorney

---

[3] Doyle concedes that the Plan establishes an "hours paid" test and that the Plan definition is consistent with 29 C.F.R. § 2530.200b-2(a).

6

provided other evidence after the hearing. The auditor prepared another report based on this information in June 2009 and it was provided to Doyle along with the Fund's decision in September 2009. The Court concludes that the Fund afforded Doyle a reasonable opportunity for a full and fair review.

Conclusion

For the reasons set forth above, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 17) filed by the Western Pennsylvania Teamsters and Employers Pension Fund will be **GRANTED**. An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM F. DOYLE, *an adult individual*, Plaintiff, <br><br> v <br><br> THE WESTERN PENNSYLVANIA TEAMSTERS AND EMPLOYERS PENSION FUND, Defendant. | 2:11-cv-401 |

## ORDER OF COURT

AND NOW, this 25th day of September, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 17) is **GRANTED**. The clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **John R. Orie, Jr., Esquire**
Email: law@oriezivic.com

**Brendan Delaney, Esquire**
Email: bdelaney@wsmoslaw.com